Matter of Joseph D.L. (Keisha T.M.) (2025 NY Slip Op 04178)

Matter of Joseph D.L. (Keisha T.M.)

2025 NY Slip Op 04178

Decided on July 16, 2025

Appellate Division, Second Department

Ventura, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 16, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ROBERT J. MILLER, J.P.
DEBORAH A. DOWLING
LOURDES M. VENTURA
DONNA-MARIE E. GOLIA, JJ.

2024-02225
 (Docket No. B-7599-20)

[*1]In the Matter of Joseph D. L. (Anonymous), nonparty-appellant. SCO Family of Services, petitioner-respondent; Administration for Children's Services of the City of New York, nonparty- respondent; Keisha T. M. (Anonymous), respondent.

APPEAL by the subject child, in a proceeding pursuant to Social Services Law § 384-b, from an order of the Family Court (Margaret Morgan, J.), dated March 14, 2024, and entered in Queens County. The order, insofar as appealed from, after a hearing, granted the motion of nonparty Administration for Children's Services of the City of New York for approval of the child's placement in a qualified residential treatment program and, in effect, denied those branches of the child's motion which were for disapproval of his placement in a qualified residential treatment program and, in effect, to direct the petitioner or nonparty Administration for Children's Services of the City of New York to locate a foster family home placement for him.

Twyla Carter, New York, NY (Dawne A. Mitchell and Judith Stern of counsel), attorney for the child, the nonparty-appellant.
Leventhal Mullaney & Blinkoff, LLP, Roslyn, NY (Jeffrey Blinkoff of counsel), for petitioner-respondent.
Muriel Goode-Trufant, Corporation Counsel, New York, NY (Melanie T. West and Jeremy W. Shweder of counsel), for nonparty-respondent.

VENTURA, J.

OPINION & ORDER
This appeal concerns the Family Court's approval of the subject child's placement in a qualified residential treatment program (hereinafter QRTP) pursuant to the New York State Family First Prevention Services Act. This appeal presents this Court with the opportunity to decide an issue of first impression, namely, which factors a court must consider in approving a child's placement in a QRTP. Under the circumstances of this case, we conclude that the Family Court should not have approved the child's placement in a QRTP, as the record did not support the court's finding that there was not an alternative setting available that could meet the child's needs in a less restrictive environment.
I. Background of the Proceeding
The child was born in 2016 and has a diagnosis of autism spectrum disorder. The child was first placed in a foster family home in 2019, after a finding of neglect was entered against his birth mother. In May 2020, the petitioner, SCO Family of Services (hereinafter SCO), a foster-care agency designated by the Administration for Children's Services of the City of New York (hereinafter ACS), commenced a proceeding against the child's birth mother and putative birth father to terminate their parental rights on the grounds of permanent neglect and abandonment. In June [*2]2022, the Family Court terminated the parental rights of both parents and freed the child for adoption.
In March 2023, the child was placed in a new foster family home. SCO indicated that the child was adjusting well to this new foster family home and was making significant developmental improvements. However, on January 12, 2024, after the child went to school with a small bump on his forehead, SCO removed the child from this foster family home on an emergency basis and transferred the child to a QRTP that specialized in working with children with developmental disabilities.
On January 17, 2024, the child moved, inter alia, for disapproval of his placement in a QRTP and, in effect, to direct SCO or ACS to locate a foster family home placement for him. On that same date, ACS moved for approval of the child's placement in a QRTP pursuant to Family Court Act § 1055-c.
In March 2024, the Family Court conducted a hearing to determine whether the child should remain in a QRTP. During the hearing, ACS called Kobi Loehr, a foster care supervisor at SCO, to testify. Loehr testified that the child was placed in a QRTP because SCO did not have any other foster family homes available that could meet the child's needs. Loehr testified that, at the time of the hearing, SCO was reviewing other foster care options for the child and was working on "stepping [the child] up" so he could be placed in a foster family home for children with developmental disabilities. On cross-examination, Loehr testified that SCO had not yet placed the child in a foster family home for children with developmental disabilities or a therapeutic foster family home through another agency because that would require a "step-up" conference, which had not been held as of the date of the hearing. Loehr further testified that a QRTP was the least restrictive setting SCO could find but conceded that a QRTP was not the least restrictive setting for the child.
A qualified individual report was introduced into evidence at the hearing. The report was prepared by a qualified individual in February 2024, pursuant to Social Services Law § 409-h and Family Court Act § 1055-c(2). The report did not recommend continuing the child's QRTP placement, on the ground that a non-QRTP placement, such as a foster family home for children with developmental disabilities or a therapeutic foster family home, would be the most appropriate and least restrictive recommended placement setting for the child based on his treatment needs, treatment goals, and permanency planning goal of adoption.
In an order dated March 14, 2024, the Family Court granted ACS's motion for approval of the child's placement in a QRTP and, in effect, denied those branches of the child's motion which were for disapproval of his placement in a QRTP and, in effect, to direct SCO or ACS to locate a foster family home placement for him. The court found that the child's placement in a QRTP was inconsistent with his long-term permanency goal of adoption and that the child's needs could be met in a foster family home for children with developmental disabilities or a therapeutic foster family home. Nevertheless, the court determined that circumstances existed that necessitated the continued placement of the child in the QRTP, since Loehr's testimony demonstrated that there were no alternative settings available that could meet the child's needs. The court determined that continued placement in the QRTP was in the child's best interest, as the QRTP was meeting the child's special needs. The child appeals.
II. Family First Prevention Services Act
The federal Family First Prevention Services Act (hereinafter the FFPSA) (42 USC §§ 672 and 675a), enacted in 2018, sets certain requirements for the placement of a child in a congregate care setting, such as a QRTP, as a prerequisite for federal funding (see id. § 672[k][1][B]). The purpose of the FFPSA is to "'ensure[ ] more foster children are placed with families by limiting federal reimbursement to only congregate care placements that are demonstrated to be the most appropriate for a child's needs, subject to ongoing judicial review'" (Matter of Malachi B. [Administration for Children's Servs.], 228 AD3d 570, 571 [emphasis omitted], quoting HR Rep 114-628, 114th Cong, 2d Sess at 28). The legislative history of the FFPSA acknowledges that, "[a]lthough there is an appropriate role for congregate care placements in the continuum of foster care settings," these placements "should be used only for as long as is needed to stabilize the child or youth so they can return to a family-like setting" since "most children and youth, but especially young children, are best served in a family setting" (HR Rep 114-628, 114th Cong, 2d Sess at 60).
In 2021, New York State codified the provisions of the FFPSA by amending relevant [*3]provisions in the Family Court Act and the Social Services Law (see L 2021, ch 56, § 1, part L). As relevant to this appeal, Social Services Law § 409-h provides that, within 30 days of the placement of a child in a QRTP, a "[q]ualified individual" (id. § 409-h[5]) shall complete an assessment as to the appropriateness of such placement, including an assessment of the strengths and needs of the child and a determination of "the most effective and appropriate level of care for the child in the least restrictive setting . . . consistent with the short-term and long-term goals for the child as specified in the child's permanency plan" (id. § 409-h[1][a]). Where the qualified individual determines that placement of the child in a foster family home is not appropriate, the qualified individual must specify in writing the reasons why such a placement cannot meet the child's needs (see id. § 409-h[1][c]). However, "[a] shortage or lack of foster family homes shall not constitute circumstances warranting a determination that the needs of the child cannot be met in a foster family home" (id.). If the qualified individual determines that the placement of the child in a QRTP is not appropriate, "the child's placement shall continue until the court has an opportunity to hold a hearing to consider the qualified individual's assessment and make an independent determination" regarding the appropriateness of the child's placement (id. § 409-h[3]).
Pursuant to Family Court Act § 1055-c, the Family Court must consider the qualified individual's assessment within 60 days of a child's placement in a QRTP (see id. § 1055-c[2][a]). The court must
"[d]etermine whether the needs of the child can be met through placement in a foster family home and, if not, whether placement of the child in a [QRTP] provides the most effective and appropriate level of care for the child in the least restrictive environment and whether that placement is consistent with the short-term and long-term goals for the child, as specified in the child's permanency plan" (id. § 1055-c[2][b]).
Upon such review, the court must approve or disapprove the placement of the child in a QRTP (see id. § 1055-c[2][c]). Where the qualified individual determines that the placement of the child in a QRTP is not appropriate, the court may approve the placement of the child in a QRTP only if the court finds that "(A) circumstances exist that necessitate the continued placement of the child in the [QRTP]; (B) there is not an alternative setting available that can meet the child's needs in a less restrictive environment; and (C) that continued placement in the [QRTP] is in the child's best interest" (id. § 1055-c[2][c][i][A]-[C]). The court must state these findings in a written order and include the "specific reasons" for these findings (id. § 1055-c[2][c][i], [ii]). The court also may consider other relevant and necessary information in making its determination (see id. § 1055-c[2][d]).
If the court disapproves QRTP placement,
"the court shall, on its own motion, determine a schedule for the return of the child and direct the local social services district to make such other arrangements for the child's care and welfare that is in the best interest of the child and in the most effective and least restrictive setting as the facts of the case may require"
and may issue a new placement order if necessary (id. § 1055-c[3]).
III. Legal Analysis
Here, since the qualified individual assessed the child and determined that placement in a QRTP would not be appropriate, the Family Court could approve the child's placement in the QRTP only if it complied with the requirements set forth in Family Court Act § 1055-c(2)(c). Although the court found that QRTP placement was inconsistent with the child's long-term permanency goal of adoption and that the child's needs could be met in a less restrictive environment, the court nevertheless approved the child's placement in a QRTP. The court, in essence, based this determination on a finding that there was not an alternative setting available that could meet the child's needs in a less restrictive environment. The child points to Social Services Law § 409-h to support his contention that the court was not permitted to consider the lack of available foster family homes in making its determination. Social Services Law § 409-h states that a "qualified individual" may not rely on a "shortage or lack of foster family homes" in determining that the child's needs cannot be met in a foster family home (id. § 409-h[1][c]). In contrast, Family Court Act § 1055-c states that the court's written order approving a child's placement in a QRTP must state, among other things, that "there is not an alternative setting available that can meet the [*4]child's needs in a less restrictive environment" (id. § 1055-c[2][c][i][B]). Thus, contrary to the child's contention, the court was required to consider the availability of foster family homes, or lack thereof, in making its determination.
However, the Family Court's findings in this regard were not supported by the record. The court's finding that there was not an alternative setting available was based on Loehr's testimony that SCO did not have any foster family homes available that could meet the child's needs but that SCO was working to place the child in a foster family home for developmentally disabled children and was actively exploring families to adopt the child. On cross-examination, Loehr testified that SCO had not yet placed the child in a foster family home for children with developmental disabilities or a therapeutic foster family home through another agency because this would require a "step-up" conference, yet Loehr failed to explain why a "step-up" conference had not been held during the two months in which the child had been placed in the QRTP. This testimony was insufficient to support the court's finding that there was not an alternative setting available that could meet the child's needs in a less restrictive environment. Furthermore, Loehr's testimony that the child had continuously lived in a foster family home setting from 2019 until January 2024, during which time his needs consistently had been met, calls into question the purported unavailability of any alternative, less restrictive settings.
Under these circumstances, the Family Court should not have approved the child's placement in the QRTP, as the court's finding that there was not an alternative setting available that could meet the child's needs in a less restrictive environment was not supported by the record (see Family Ct Act § 1055-c[2][c][i][B]; see also Matter of Felpie R. [Iris C.], 76 Misc 3d 373, 376 [Fam Ct, Bronx County]; Matter of Trevon G. [Natova G.], 77 Misc 3d 1211[A], 2022 NY Slip Op 51188[U] [Fam Ct, Bronx County]). In light of our determination, we need not consider whether the record supported the court's findings that circumstances existed that necessitated the continued placement of the child in the QRTP (see Family Ct Act § 1055-c[2][c][i][A]) or that continued placement in the QRTP was in the child's best interest (see id. § 1055-c[2][c][i][C]).
IV. Conclusion
Accordingly, the order is reversed insofar as appealed from, on the law and the facts, ACS's motion for approval of the child's placement in a qualified residential treatment program is denied, those branches of the child's motion which were for disapproval of his placement in a qualified residential treatment program and, in effect, to direct SCO or ACS to locate a foster family home placement for him are granted, and the matter is remitted to the Family Court, Queens County, for further proceedings in accordance with Family Court Act § 1055-c(3), to be conducted expeditiously.
MILLER, J.P., DOWLING and GOLIA, JJ., concur.
ORDERED that the order is reversed insofar as appealed from, on the law and the facts, without costs or disbursements, the motion of nonparty Administration for Children's Services of the City of New York for approval of the child's placement in a qualified residential treatment program is denied, those branches of the child's motion which were for disapproval of his placement in a qualified residential treatment program and, in effect, to direct the petitioner or nonparty Administration for Children's Services of the City of New York to locate a foster family home placement for him are granted, and the matter is remitted to the Family Court, Queens County, for further proceedings in accordance with Family Court Act § 1055-c(3), to be conducted expeditiously.
ENTER:
Darrell M. Joseph
Clerk of the Court